## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

ASHLEY N. PARKER,                        )
                                       )
               *Plaintiff*                 )
                                         )
*v.*                                     )          No. 1:15-cv-00446-JHR
                                         )
CAROLYN W. COLVIN,                       )
*Acting Commissioner of Social Security,*  )
                                         )
              *Defendant*                 )

### MEMORANDUM DECISION[1]

This Child's Disability Benefits ("CDB") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.  The plaintiff seeks remand on the bases that the administrative law judge failed to find that she had a severe impairment of personality disorder and made a determination of her mental residual functional capacity ("RFC") that is unsupported by substantial evidence.  *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 1-10.[2]  I agree that the administrative law judge erred in both respects and that the errors were not harmless.  Accordingly, I vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on June 15, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.  The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment.  ECF No. 20.

[2] In her statement of errors, the plaintiff also contended that the administrative law judge erred in failing to find that she had a severe impairment of depression.  *See* Statement of Errors at 2.  However, at oral argument, her counsel withdrew that point.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of anxiety, attention deficit hyperactivity disorder ("ADHD"), and learning disability, Finding 3, Record at 15; that she had the RFC to perform simple work at all exertional levels involving no public interactions, Finding 5, *id.* at 17; that, considering her age (19 years old, defined as a younger individual, on her amended alleged disability onset date, October 1, 2010), education (limited), work experience (none), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 21; and that she, therefore, had not been disabled from her alleged disability onset date through the date of the decision, May 16, 2014, Finding 11, *id.* at 22.[3]  The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[3] To be entitled to Child's Disability Benefits on the earnings record of a wage earner, a claimant must demonstrate, *inter alia*, that if he or she is over age 18 and not eligible for benefits as a full-time student, he or she has a disability that began before age 22.  *See* 20 C.F.R. § 404.350; *see also, e.g., Starcevic v. Commissioner of Soc. Sec.,* No. 08-13128, 2009 WL 2222631, at *6 (E.D. Mich. July 22, 2009) (claimant applying for Child's Disability Benefits must demonstrate that he or she was disabled before he or she turned 22 "and was continuously disabled from the date of [his or] her twenty-second birthday through the date that [he or] she applied for benefits").

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social Security Ruling 85-28).

## I.  Discussion

The record contains four expert opinions bearing on the plaintiff's mental RFC: a May 16, 2012, report of agency examining consultant Edward Quinn, Ph.D., a June 1, 2012, opinion of agency nonexamining consultant Brian Stahl, Ph.D., an August 23, 2012, opinion of agency nonexamining consultant Brenda Sawyer, Ph.D., and a March 26, 2014, assessment by the plaintiff's treating counselor Molly Eldredge, LCPC, the rejection of which the plaintiff does not contest.  *See* Record at 20, 75-80, 98-100, 548-52, 666-67; Statement of Errors at 1-10.

## A.  Relevant Opinions

With the benefit of a psychological evaluation conducted on May 16, 2012, Dr. Quinn diagnosed the plaintiff with cognitive disorder NOS [not otherwise specified], R/O [rule out] panic disorder without agoraphobia, learning disorder NOS by history, borderline intellectual functioning, and borderline personality disorder.  *See* Record at 552.  He gave her a current GAF, or Global Assessment of Functioning, score of 55 to 65.  *See id*.[4]  He stated:

> She should be able to follow work rules.  She may have some difficulties interacting with others due to personality factors.  She should be able to use appropriate gross judg[]ment.  She may have some difficulties with stressors at times.  She should be able to function independently.  Difficulties with attention, concentration, persistence, pace, and memory were not observed during the clinical interview.  She should be able to complete simple job tasks.  As job tasks become increasingly more complex and detailed, she is likely to have increased difficulties.  She should be able to maintain personal appearance.  She may have some issues with emotional stability.  She may have some difficulties in social settings.

*Id*. at 551.

With the benefit of the Quinn report, first Dr. Stahl and then Dr. Sawyer assessed the severity of the plaintiff's mental impairments using forms that track the commissioner's prescribed psychiatric review technique ("PRT").

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id*.  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id*. at 34.  A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id*. (boldface omitted).  A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id*. (boldface omitted).  In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores.  *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").  Nonetheless, I assess the supportability of the administrative law judge's decision based on the evidence available to him at that time.

Adjudicators must follow that prescribed technique in assessing whether, at Step 2, a claimant has medically determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.

At Step 2, the severity of a mental impairment is assessed on the basis of a rating of the degree of limitation in four broad functional areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence, or pace, and (iv) episodes of decompensation.  *See id.* If a mental impairment is judged to be severe but not to meet or equal a Listing, assessment of a claimant's mental RFC is required; if it is judged nonsevere, no mental RFC assessment need be made.  *See id.*

Dr. Stahl indicated that he gave great weight to the Quinn report.  *See* Record at 77.  He found that the plaintiff had four medically determinable mental impairments, two of which (personality disorders and organic mental disorders) were severe, and two of which (anxiety disorders and affective disorders) were nonsevere.  *See id*. at 75-76.  He indicated that those impairments collectively caused moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with no repeated episodes of decompensation, each of extended duration.  *See id*. at 76.

In the mental RFC section of the form, he rated the severity of the plaintiff's specific limitations in four categories (understanding and memory, sustained concentration and persistence, social interaction, and adaptation) and provided, for each of those categories, a narrative

explanation of his ratings. *See id*. at 77-79. With respect to sustained concentration and persistence, he explained:

> She is able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek. She manages personal care, makes simple meals, shops, uses a computer. Difficulties with attention, concentration, persistence and pace not observed at the CE [consultative examination].

*Id*. at 78.

> With respect to social interaction, he explained:

> She is not able to work with the public but can work with coworkers and supervisors. She would do better in employment that limited interactions.

*Id*. at 79. He added, in a section titled "MRFC – Additional Explanation":

> MER [medical evidence of record] supports cognitive disorder, personality disorder, anxiety disorder, and depression. Conditions do not meet or equal a listing but severe. Despite conditions and associated limitations, she is able to do simple work that does not involve the public.

*Id*.

Dr. Sawyer found that the plaintiff had three medically determinable mental impairments (anxiety disorders, ADD/ADHD, and learning disorder), all of which were nonsevere in that they collectively caused only mild functional restriction or difficulty, with no episodes of decompensation. *See id*. at 98-99. She, therefore, did not complete a mental RFC assessment. *See id*. at 100.

## B. Administrative Law Judge's Analysis

As the plaintiff points out, *see* Statement of Errors at 2, the administrative law judge found that she had severe impairments of anxiety, ADHD, and learning disability but never addressed whether she had a medically determinable impairment of personality disorder and, if so, whether it was severe, *see* Record at 15.

The administrative law judge summarized but did not analyze Dr. Quinn's report, other than to observe that a GAF score of 55 to 65 is indicative of mild to moderate symptoms or mild to moderate difficulty in social, occupational, or school functioning. *See id.* at 18.

With respect to the Stahl and Sawyer opinions, he stated:

> The conclusions reached by these physicians also supported a finding of not disabled; although the undersigned finds that the [plaintiff] is somewhat more limited than she was previously assessed to be. Despite the fact that these physicians were non-examining, they are accorded significant weight, particularly in the instant case, where there exist[s] consistent medical evidence to reach similar conclusions (as explained throughout this decision) and where their opinions are not contradicted.

*Id.* at 20.

The commissioner all but concedes that the administrative law judge erred in neglecting to address whether the plaintiff had a medically determinable, severe impairment of personality disorder, arguing that any error was harmless in that (i) Drs. Quinn and Stahl were the only two sources of record to diagnose personality disorder, and (ii) the administrative law judge relied on the opinion of Dr. Stahl, who in turn relied on the opinion of Dr. Quinn, thereby capturing any resulting limitations. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 17) at 4-5. She asserts that, in any event, the plaintiff fails to carry her burden of demonstrating that any error was outcome-determinative. *See id.* at 4; *see also, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

The commissioner concedes that the administrative law judge erred in failing to evaluate the Quinn opinion. *See* Opposition at 8. However, she reiterates that the error was harmless

because the administrative law judge relied on the Stahl opinion, which adequately reflected that of Dr. Quinn. *See* Opposition at 8-9.[5]

Finally, at oral argument, counsel for the commissioner conceded that the administrative law judge erred in characterizing the Sawyer and Stahl reports as consistent with one another. Yet, she contended that the error was harmless because it was clear that he had relied on the opinion of Dr. Stahl, which constitutes substantial evidence in support of his mental RFC finding.

The plaintiff makes a persuasive case that these errors were not harmless because the administrative law judge's reliance on the Stahl and Sawyer opinions was misplaced and, to the extent that he relied on Dr. Stahl, he omitted either to adopt, or explain why he did not adopt, the Stahl opinion in its entirety.

"[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994). "In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Id.* (citations and internal quotation marks omitted).

---

[5] The commissioner does take issue with the notion that the administrative law judge was required to evaluate certain portions of the Quinn report – those on which the plaintiff relies – on the basis that they were ambiguous and equivocal and, as such, did not constitute a "medical opinion" that needed to be specifically weighed. Opposition at 9. For that proposition, she cites this court's observation in *Sheldon v. Colvin*, Civil No. 2:13-CV-315-DBH, 2014 WL 3533376, at *5 (D. Me. July 15, 2014), that similar statements by agency examining consultants containing qualifiers such as "may" and likely did not constitute "RFC opinions" pursuant to 20 C.F.R. §§ 404.1545(c) and 416.945(c). *See id.*; *Sheldon*, 2014 WL 3533376, at *5. However, "RFC opinions" are not synonymous with "medical opinions." The regulations cited in *Sheldon* provide, "When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(c) and 416.945(c). By contrast, "medical opinions" are defined more broadly as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* §§ 404.1527(a)(2), 416.927(a)(2). Even to the extent that some of the restrictions set forth by Dr. Quinn are vague or qualified, his statements as a whole constitute a "medical opinion." In turn, the commissioner promises that, "[r]egardless of its source, we will evaluate every medical opinion we receive." *Id.* §§ 404.1527(c), 416.927(c).

8

As a threshold matter, as the plaintiff's counsel contended at oral argument, Dr. Stahl neither fairly captured all of Dr. Quinn's findings nor explained why he did not, even though he indicated that he gave the Quinn opinion great weight.  *See* Record at 77.  In finding that the plaintiff had a severe personality disorder, was not able to work with the public, and "would do better in employment that limited interactions[,]" Dr. Stahl presumably credited Dr. Quinn's conclusions that the plaintiff "may have some difficulties interacting with others due to personality factors[,]" "may have some difficulties with stressors at times[,]" "may have some issues with emotional stability[,]" and "may have some difficulties in social settings."  *Compare id*. at 76, 79 *with id*. at 551.  Yet, he did not explain why he deemed the plaintiff capable of interacting with coworkers and supervisors.  *See id*. at 79.  As the plaintiff's counsel noted at oral argument, this is in marked contrast to his explanation for his finding that the plaintiff was capable of working in two-hour blocks performing simple tasks, with respect to which he stated that she "manages personal care, makes simple meals, shops [and] uses a computer" and that "[d]ifficulties with attention, concentration, persistence and pace [were] not observed" by Dr. Quinn during his examination.  *Id*. at 78.[6]

Second, as the plaintiff's counsel noted at oral argument, there is a tension between Dr. Stahl's finding, in rating the plaintiff's social interaction limitations, that she was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and the absence of any corresponding limitation in his RFC opinion.  *See id*. at 79.  The

---

[6] The commissioner argues that Dr. Quinn's restrictions are not inherently inconsistent with those assessed by either Dr. Stahl or the administrative law judge.  *See* Statement of Errors at 9.  She observes that, in *Sheldon*, this court found that an administrative law judge properly relied on the more specific opinions of agency nonexamining consultants rather than the vague statements of agency examining consultants.  *See id*. at 9-10.  However, *Sheldon* is distinguishable in that, there, the administrative law judge evaluated both sets of opinions, choosing to give "some weight" to those of the examining consultants, to the extent consistent with those of the nonexamining consultants, and explaining why.  *See Sheldon*, 2014 WL 3533376, at *7.

commissioner suggests that, because Dr. Stahl's RFC opinion is set forth in his narrative explanations, not his ratings of the severity of individual restrictions, his RFC opinion controls. *See* Opposition at 6-8; Record at 77, 79; *Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424, at *6 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007).  She argues that, in any event, Dr. Stahl's indication that the plaintiff was moderately limited in those respects "does not necessarily mean that [she] would be incapable of interacting with supervisors[.]"  Opposition at 8.  This begs the question: while Dr. Stahl's statement does not suggest that the plaintiff is *incapable* of interacting with supervisors, it does suggest that she has limitations in doing so.  The absence of any explanation for the seeming discrepancy between the individual rating and the RFC narrative tends to call Dr. Stahl's RFC opinion into doubt.

Third, as the plaintiff notes, *see* Statement of Errors at 2-3, despite purporting to give the Stahl opinion "significant weight," the administrative law judge omitted Dr. Stahl's finding that the plaintiff "would do better in employment that limited interactions[,]" Record at 20, 79.  Yet, he failed to recognize, let alone explain, the omission.  *See id*. at 20.  The commissioner observes that the notion that the plaintiff would "do better" with limited interaction did not mean that she was incapable of interacting with coworkers or supervisors.  Opposition at 7-8.  Again, this begs the question: the statement implied that the plaintiff would experience some level of difficulty in interacting with others besides members of the public, with whom Dr. Stahl already had found that she could not interact.

At oral argument, counsel for the commissioner added that the statement did not constitute a specific limitation but, rather, a vague qualification, obviating the need to address it.  However, as the commissioner herself points out, *see* Opposition at 7 n.4, the form completed by Dr. Stahl states that "the actual mental residual functional capacity assessment is recorded in the narrative

discussion(s) in the explanation text boxes[,]" Record at 77.  The administrative law judge was not free to ignore it.  *See, e.g., Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).

Finally, as the plaintiff argues, *see* Statement of Errors at 5-7, the administrative law judge purported to give substantial weight to two conflicting opinions, those of Drs. Stahl and Sawyer, *see* Record at 20, 75-80, 98-100.  This error, in itself, would not have been fatal: as the commissioner observes, *see* Opposition at 6, one can reasonably infer that the administrative law judge adopted the opinion of Dr. Stahl, *compare* Finding 5, Record at 17 *with id*. at 78-79.  Yet, in these circumstances, it is another factor tipping the scales in favor of the conclusion that the administrative law judge's mental RFC is unsupported by substantial evidence.

These errors, collectively, are not harmless.  As the plaintiff points out, *see* Statement of Errors at 9, the administrative law judge applied the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, to determine at Step 5 that she was not disabled, *see* Record at 21-22.

The Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level.  *Ortiz v. Secretary of Health & Human Servs.,* 890 F.2d 520, 524 (1st Cir.1989) (citation and internal quotation marks omitted).  "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible

effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

As the plaintiff observes, *see* Statement of Errors at 3, Social Security Ruling 85-15 ("SSR 85-15") provides, in relevant part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991, at 347.

Dr. Quinn and Dr. Stahl indicated that the plaintiff had limitations bearing on her ability to respond appropriately to supervision and/or coworkers. *See* Record at 79, 551. The administrative law judge failed either to include, or to explain the omission of, those limitations. This, in turn, undermined his reliance on the Grid. Had such restrictions been found, it is not self-evident that they would have had only a negligible effect on the plaintiff's ability to perform the full range of work at all exertional levels. *See, e.g.*, *Gurney v. Astrue*, Civil No. 09-153-B-W, 2010 WL 323912, at *3 (D. Me. Jan. 20, 2010) (remand required when an administrative law judge relied on the Grid without support for the proposition that a restriction to only occasional interaction with supervisors and coworkers had no more than a negligible effect on a claimant's ability to perform the full range of unskilled jobs).

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED** and the case **REMANDED** for proceedings consistent herewith.

Dated this 19th day of September, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge